**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **2:19-cr-00467-ACA-JHE** |
| | ) | |
| **ARKEUNTREZ WASHINGTON** | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

For the reasons stated below, the United States recommends that the Court impose a high-end guideline range sentence of 30 months' imprisonment, followed by the maximum three year supervised release term.

**INTRODUCTION**

Federal law enforcement authorities began investigating the defendant for possible firearms trafficking in July 2019, after noting his repeated purchases in sales reports. The defendant is known to have acquired at least 16 firearms, including AR-style pistols,[1] in the seven months between November 2018 and July 2019, including five on one day, and three shotguns during a 20 day period in June 2016. Law enforcement later learned that the defendant had written at least one letter to imprisoned attempted 9/11 hijacker Zacharias Moussouai. The defendant also had

---

[1] An AR-style pistol is a smaller version of what some refer to as an "assault rifle," which is shorter than an AR-style rifle, but can fire the same caliber bullets, e.g., .223 or .300, and uses the same type magazines, whether in 10, 20 or 30 round capacities. The Dayton, OH gunman who killed nine and wounded 27 in August 2019, used an AR-style pistol.

1

pieces of paper with hand-written instructions on how to build a pen bomb, and another containing the handwritten names of Anwar Awlaki and Abu Bashir, both members of or affiliated with al Qaeda in the Arabian Peninsula, a designated foreign terrorist organization.

Pursuant to its plea agreement with the defendant, the United States is obligated to recommend a sentence within the advisory guidelines range, which is 24 – 30 months imprisonment. The defendant pled guilty to Count One of the Indictment – engaging in the business of dealing in firearms without a license – in violation of 18 U.S.C. § 922(a)(1)(A). The United States will recommend that false statement charges relating to his acquisition of firearms, which offer no higher statutory maximum sentence of imprisonment, be dismissed at sentencing

## ARGUMENT

### I.     The Correct Guidelines Range is 24 - 30 months.

After application of two separate four level enhancements, and decreases for acceptance of responsibility, the presentence report (PSR) calculates a total offense level of 17 and a criminal history category I, resulting in a Zone D advisory guidelines sentencing range of 24 - 30 months.[2] (PSR at 19, ¶ 84). Neither party has objected to the offense level, criminal history category, or guideline range.

---

[2] If a guideline range is in Zone D of the USSG Sentencing Table, the guidelines do not authorize a probationary sentence. (U.S.S.G. § 5B1.1, comment n.2).

The PSR correctly notes that, had the defendant trafficked in firearms, his offense level would have increased by four levels, resulting in a total offense level of 21 with an imprisonment guideline range of 37 months to 46 months. The relevant guideline states that "if the defendant engaged in the trafficking of firearms, increase by 4 levels." § 2K2.1(b)(5). However, the enhancement does not apply unless the defendant disposed of firearms to another person and the defendant knew that the other person could not legally possess a gun (such as in the case of a felon), or knew that the other person intended to use or dispose of the firearm unlawfully. § 2K2.1(b)(5), application note 13. Despite the clear evidence that the defendant was dealing in firearms without a license, the United States is not able to offer evidence that the defendant knew whether any of his customers satisfied the conditions of this enhancement.

## II. The Recommended Guidelines Range Sentence Achieves the Purposes of Sentencing Under § 3553(a)

Having correctly calculated the guidelines range, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to the plea agreement, the United States must recommend a sentence within the guideline range. As explained below, a sentence of 30 months achieves the purposes of sentencing set forth in § 3553(a).

**A. The defendant repeatedly engaged in his conduct.**

The defendant began buying and selling firearms without a license as early as 2016, when he purchased three shotguns, one of which was a straw purchase (PSR at 8, ¶ 18), and only ended with his August 2019 arrest based on the complaint in this case.

Agents arrested the defendant on August 6, 2019, after he purchased yet another AR-style pistol from Hoover Tactical Firearms.[3] As of that date, the defendant had been:

- questioned by ATF three times (July 12, 19, and July 24, 2019) about his firearm activities, and

- had been questioned a fourth time, after a search warrant had been served at his residence (July 26, 2019).

And, a post-arrest search of his car revealed yet another firearm -- a Glock 9mm pistol.[4]

So, rather than ceasing his behavior following four different law enforcement contacts, including execution of a search warrant, the defendant seemingly continued his business – taking delivery of another AR-style pistol identical to those he had

---

[3] Before the defendant took delivery, Agents had arranged for the firing pin to be removed.

[4] It is known that the defendant purchased at least 16 shotguns, pistols, and AR-style pistols between 2016 and 2019. (Doc. 39, at 5, ¶ B).

been buying and then selling without a license to do so. He was clearly aware of his wrongful conduct and just as clearly chose to continue. Thus, his conduct was not just knowing – it was willful – and a lengthy prison sentence is thus warranted.

Finally, the defendant claimed to have used a "go-phone" or "burner" phone to engage in his activities, which he said included sales using fictitious names to people in California and New York and in foreign countries. (PSR at 9, ¶ 25, and at 10, ¶ 26). He utilized an online service, Armslist, to advertise guns for sale and told law enforcement that he offered one person a commission for each person brought to the defendant as a customer. (PSR at 10, ¶ 28-29).

**B.     At least one of the defendant's guns ended up in juvenile hands.**

During its investigation, ATF was able to recover one of the firearms, originally purchased by the defendant, in the possession of a juvenile.

On December 20, 2019, ATF spoke with 15 year old Juvenile A at his mother's residence in the Birmingham area about his possession of an AR-style pistol on October 10, 2019, which had been recovered by Jefferson County Sheriff's Office. The firearm was another AR-style pistol which had been purchased by the defendant just over three months earlier, on July 3, 2019. Juvenile A denied ownership of the gun, claiming it belonged to a person named "Dairy," but was unable to provide any contact information for Dairy. Juvenile A told Sheriff's Deputies in October 2019 that he had purchased the gun from an unidentified person

in an apartment complex located in the same general area. Juvenile A denied knowing the defendant when shown a picture.

Agents recovered another of the defendant's firearms in the possession of a person under 21 (Individual A), just 25 days after the defendant originally purchased it. On September 24, 2019, ATF interviewed Individual A in Fairfield, Alabama, to discuss his July 15, 2019, possession of the AR-style pistol in Pleasant Grove. At the time of his possession, Individual A was not 21 and therefore could not have legally purchased it. The AR-pistol had originally been purchased by the defendant during a multiple sale firearm purchase on June 20, 2019, 25 days before Individual A's possession of the gun.

Individual A initially told the ATF that he had purchased the pistol from a from a friend of a friend, initially identified as a white male. Individual A later said he had purchased it from black male somewhere in the Ensley Five Points area.

**C.    A sentence of 30 months of imprisonment followed by a three year term of supervised release provides just punishment, and promotes deterrence.**

The recommended sentence also "reflects the seriousness of the offense," "promote[s] respect of the law," and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). A sentence of 30 months of imprisonment is just punishment. Additionally, the recommended sentence is within the guidelines range and therefore reflects the kinds of sentences and the sentencing range

established by the Sentencing Commission in its guidelines and policy statements. *See* 18 U.S.C. § 3553(a)(4)-(5).

Finally, a sentence of 30 months would "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Without question, the type of conduct at issue is the type that is especially susceptible to deterrence; it is thought-out and calculated criminal conduct. *United States v. Martin*, 455 F.3d 1227, 1279 (11th Cir. 2006) (recognizing that some crimes, being more "rational cool, and calculated than sudden crimes of passion or opportunity," are "prime candidates for general deterrence.")

### III. Relevant History and Characteristics of the Defendant.

During service of the July 26, 2019 search warrant at the defendant's residence, law enforcement found, in addition to evidence relating to his firearm activities, notebooks, journal entries, and notes bearing on the defendant's history and characteristics.

ATF found two envelopes at the defendant's residence which had been addressed to Zacarias Moussaoui at a Federal Bureau of Prisons facility. The envelopes were dated February 2, 2019, and March 1, 2019, and had been returned undelivered to the defendant. The March 1 envelope contained a handwritten letter by Washington, and a statement from BOP explaining that his letter had not been

delivered to Moussaoui because he was not on the approved correspondence list.[5]

According to open source reporting, Zacarias Moussaoui was a member of al Qaeda and part of the conspiracy to commit the terrorist attacks against the United States on September 11, 2001. Specifically, Moussaoui was trained as a terrorist in al Qaeda camps in Afghanistan and was sent to the United States to take flight training after another al Qaeda terrorist was unable to obtain a visa to enter the United States. After arriving in the United States in 2001, Moussaoui engaged in flight training, as well as martial arts and physical training, in preparation to hijack an aircraft to use in a terrorist attack. In 2006, Moussaoui pled guilty to six terrorism-related crimes and received a life sentence for each.

In the letter, the defendant introduced himself and said that he was contacting Moussaoui because, while he had "watched documentaries and read" about Moussaoui, he could not "go by what others say." He asked Moussaoui about his place of birth, education, and upbringing, and wrote about his own experiences in Paris and Strasbourg. The defendant then stated:

Where [sic] you able to learn a lot from our Muslim Brothers?

I read you attend flight training courses at Airman Flight School in Norman, Oklahoma in February 26 to May 29, 2001. Is it hard to get your pilots licenses or fly a plan [sic]?

---

[5] The envelopes and letter were introduced as Government's Exhibits 1-3 at the defendant's detention hearing. Case No. 2:19-cr-467 at Doc. 5.

Because I've bought some plane simulators and I fly drones[.] I just started last summer in 2018 I had bought my first drone which is fun to fly especially FPV – (First Person View).

The letter then asked Moussaoui about his family, and said that he hoped to hear from Moussaoui soon.

ATF also found notebooks and journal entries, which contained handwritten instructions on how to construct several illegal explosive devices and bombs.[6] One set of instructions detailed how to create a "pen bomb" using a pen, flash powder, and a fuse. Another set of instructions described how to create a "works bomb," also known as a "Drano bomb," using drain cleaner, aluminum foil, and a bottle. At the bottom of the instructions was the note "make foil pieces big for big impact" and three names: "Shayk Anwar al Awlaki," "Shayk Abu Basir," and "Asrur al-Mujahideen".

According to open source reporting, Anwar al-Awlaki was an American-born Muslim scholar and cleric who was a recruiter and propagandist for al Qaeda in the Arabian Peninsula ("AQAP"). In or about 2009, al-Awlaki was promoted to a senior position within AQAP, and specifically was placed in charge of both AQAP's propaganda division as well as its so-called "external operations" division—the division responsible for the planning and execution of terrorist attacks outside of

---

[6] The explosives instructions were introduced as Government's Exhibit 4 at WASHINGTON's detention hearing. Case No. 2:19-cr-467 at Doc. 5.

Yemen, including attacks against the United States and other Western countries. Al-Awlaki was killed in Yemen in September 2011.

According to open source reporting, Abu Basir (also known as Nasir al-Wuhayshi) was a Yemini citizen and the leader of AQAP. Basir was killed in Yemen in June 2015.

According to open source reporting, Asrur al-Mujahideen is an encryption software used by terrorist organizations to communicate without being intercepted by government agencies. The word "mujahideen" means those who are engaged in jihad, or fighters.

ATF also found the books "Principles of Improvised Explosives" and "How to Build Military Grade Suppressors"[7] inside a green 1993 Honda Civic that was parked on the premises.

---

[7] Images of the covers of these books were introduced as Government's Exhibits 5 and 6 at the defendant's detention hearing. Case No. 2:19-cr-467 at Doc. 5.

## CONCLUSION

The United States recommends imposition of a 30 month sentence of

imprisonment followed by a supervised release term of 3 years.

Respectfully submitted,

PRIM F. ESCALONA
United States Attorney

/s/ *Henry Cornelius*
HENRY CORNELIUS
Assistant United States Attorney


## CERTIFICATE OF SERVICE

This pleading was filed with the Clerk of the Court using the CM/ECF system

on July 22, 2020.


/s/ *Henry Cornelius*
HENRY CORNELIUS
Assistant United States Attorney